**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **FIRSTBANK PUERTO RICO,** )<br>)<br>Plaintiffs, )<br>) Civil No. 17-09<br>v. )<br>)<br>**PHYLLIS MISITE,** )<br>)<br>Defendant. )<br>) | |

ATTORNEYS:

**Carol Ann Rich, Esq.**
**Malorie Diaz, Esq.**
Dudley Rich Davis LLP
St. Thomas, VI
    *For FirstBank Puerto Rico.*

**Mark Kragel, Esq.**
**Tobi Ann Russek, Esq.**
**Ravinder Nagi, Esq.**
Bolt Nagi PC
St. Thomas, VI
    *For Phyllis Misite*

## ORDER[1]

GÓMEZ, J.

Before the Court is the summary judgment motion of FirstBank Puerto Rico.

---

[1] The Court previously granted FirstBank Puerto Rico's motion for summary judgment. This memorandum opinion outlines the reasons for the Court's ruling.

I.   **FACTUAL AND PROCEDURAL HISTORY**

In December, 2008, Phyllis Misite ("Misite") received a loan from FirstBank Puerto Rico ("FirstBank") for the purpose of constructing a home. She refinanced the loan in October, 2010.[2]

In June, 2014, she refinanced the loan again. She also granted a mortgage over the property where she was building the home.[3] The loan and mortgage were then modified in September 2015.

In August, 2016, Misite allegedly defaulted after failing to make payments as required by the loan and mortgage. FirstBank then filed this debt and foreclosure action against Misite on February 6, 2017.

On December 20, 2017, FirstBank moved for summary judgment on its claims.

II.   **DISCUSSION**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 ("Rule 56") if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[2] Misite indicates that the first refinance was required due to delays caused by FirstBank's negligence.
[3] Misite indicates that she was forced to enter into these agreements due to difficult financial circumstances. She contends that those financial circumstances were caused by fraudulent misrepresentations by FirstBank, described in more detail later in this memorandum opinion.

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy,* 762 F.2d 338, 342 (3rd Cir.1985). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls,* 536 U.S. 822, 850 (2002).

### III.    ANALYSIS

**A. Movant's Burden**

To prevail on its debt and foreclosure claims, the plaintiff must show that: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to

foreclose on the property mortgaged as security for the note. *Thompson v. Florida Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. 2009). In support of its motion for summary judgment, FirstBank has adduced: (1) an initial "Refinancing Agreement" and note; (2) a "Construction Mortgage"; (3) a "Modification of Note" dated September 21, 2015; (4) a "First Amendment to Refinancing Agreement"; (5) a default notice; (6) an affirmation of costs; and (7) the affidavit of Paula Edwards ("Edwards"), Vice President and Operations Manager for First Bank. Those documents and the admitted allegations in the complaint, are evidence of the following:

1. Misite is owner-of-record of the real property described as:

   > Parcel No. 9-2-11 Estate Peterborg
   > No. 12 Great Northside Quarter
   > St. Thomas, Virgin Islands
   > As shown on PWD No. B9-503-T80
   > (the "Mortgaged Property").

   *Complaint*, ECF No.1 at ¶ 3; *Answer*, ECF No. 27 at ¶ 3.

2. On or about June 24, 2014, Misite, by and through her Attorney in Fact, James K. Lawrence ("Lawrence"), executed and delivered to FirstBank a Note (the "Note") obligating Misite to pay the principal amount of $1,000,000, together with interest at the rate of 4.00% per annum for the first five years and thereafter at rate of 5.25% for the

>
> remaining twenty-five (25) years. The Note was a consequence of a refinancing agreement between Misite and FirstBank, in which FirstBank extended $1,000,000 to Misite. Payments were to commence on August 1, 2014. The Note provided for a six (6) month deferment of payments of principal and interest from the date of issuance of a certificate of occupancy, provided that construction was completed within nine (9) months of execution of the Note. *Note and Power of Attorney*, ECF No. 41-3, at ¶¶ 2-3(A) & pg. 4.
>
> 3. Misite, by and through her Attorney in Fact, Lawrence, also executed a Construction Security Interest First Priority Mortgage in favor of FirstBank, dated June 24, 2014 (the "Construction Mortgage") over the Mortgaged Property. The Construction Mortgage was recorded in the Office of the Recorder of Deeds for the District of St. Thomas & St. John on June 30, 2014 as Document No. 2014005276. *Mortgage*, ECF No 41-4. The Construction Mortgage secured the payment of the Note, and all renewals, extensions and modifications of the note, and (ii) the performance of Misite's obligations under the Construction Mortgage and the Note. *See* ECF No. 41-4, at 102.

4. Misite failed to complete construction within nine months of executing the Note. FirstBank granted Misite an extension of the construction deadline through August, 2015. *Edwards Affidavit*, ECF No. 41-1, at ¶ 6.

5. On September 21, 2015, Lawrence signed a document titled "First Amendment to Refinancing Agreement." ECF No. 41-6. To incorporate the terms of that document into the Note, Lawrence also signed a document titled Modification of Note.[4] ECF No. 41-5. The Modification of Note provided that the payment of principal and interest would be deferred for twelve months following completion of construction on the Mortgaged Property (the "Deferment Period"). The deferment

---

[4] The power of attorney given by Misite authorizes Lawrence:

a) to execute and deliver any contracts, notes, closing statements, mortgages, loan commitment agreements, and other related documents which may be necessary or proper in order to obtain a mortgage loan in an amount not exceeding **ONE MILLION DOLLARS (US $1,000,000)**; at an interest rate of **4.00%** over a term of S years and **5.25%** for the remaining **25** years of the loan term from **FIRSTBANK PUERTO RICO TO PHYLLIS MISITE** encumbering the . . . [Mortgaged property.]

b) to issue and approve checks on my behalf for the payment of any sums due and owing for the refinancing of the property, and to perform every other act necessary for the completion of the refinancing of the property, as if I might do if personally present

ECF No. 41-3, at 4. The power of attorney "remain in full force and effect until consummation of these transactions." *Id.*
    That power of attorney does not appear to cover the subsequent modifications of the Note and Construction Mortgage referenced in this paragraph. However, Misite has not raised any objections on that basis. Moreover, having reviewed those documents, the provisions do not appear to affect the amount owed. They merely deferred the payment of interest. Those documents did include a waiver of claims by Misite, but the validity of that waiver is not implicated here.

of payments was conditioned on the completion of construction within nine months plus one extension of ninety days. Payments were to recommence on August 1, 2016. In addition, during the Deferment Period, Misite was required to make monthly payments into a mortgage escrow account for property taxes and hazard insurance. *Modification of Note*, ECF No. 41-5, at ¶ 3(A).

6. Misite did not make the escrow payments during the Deferment Period and failed to recommence payment after the conclusion of the Deferment Period. ECF No. 41-1, at ¶ 9.

7. By written notice dated September 27, 2016, which was delivered to the Mortgaged Property, FirstBank advised Lawrence, as attorney in fact for Misite, of Misite's defaults under the Construction Mortgage Loan, as modified. FirstBank also demanded payment of the principal, interest, escrow charges and late charges due and owing in order to bring the loan up to date. FirstBank further advised Lawrence that if payment were not made, FirstBank could declare all sums due pursuant to the Note and Construction Mortgage, as amended, without further demand. In addition, FirstBank advised Lawrence that failure to cure the defaults in the manner provided, and by the date provided in the September 27, 2016, Notice, could result in

   foreclosure of the Construction Mortgage through judicial proceedings and sale of the property. *Id.* at ¶ 10; *Default Notice*, ECF No. 41-7

8. Misite failed to cure the defaults, and as a result, FirstBank elected to accelerate all amounts due thereunder and to commence this action for debt and foreclosure. ECF No. 41-1, at ¶ 11.

9. As of December 1, 2017, the amount due and owing to FirstBank under the Construction Mortgage Loan was One Million Seventy One Thousand Eight Hundred Ninety Two and 44/100 Dollars ($1,071,892.44), consisting of the principal sum of Nine Hundred Seventy Three Thousand Three Hundred Seventeen and 26/100 Dollars ($973,317.26 ), plus deferred interest in the amount of Thirty Eight Thousand Nine Hundred Sixty One and 99/100 Dollars ($38,961.99); plus accrued interest in the amount of Thirty Six Thousand Eight Hundred Sixty One and 60/100 ($36,861.60), plus an escrow overdraft in the amount of Nineteen Thousand One Hundred Thirty and 94/100 Dollars ($19,130.94) and accumulated late charges in the amount of Three Thousand Five Hundred Eight and 65/100 Dollars, plus other costs of Forty Dollars ($40.00), plus costs and attorney's fees in an amount to be determined by the Court. *Id.*at 12.

The evidence adduced by FirstBank establishes each of the elements for its debt and foreclosure claims. As such, FirstBank has met its initial burden of showing that there is no dispute of material fact and that it is entitled to judgment as a matter of law. The burden now shifts to Misite to show that there is a dispute of material fact or that FirstBank is otherwise not entitled to judgment as a matter of law.

**B. Non-Movant's Burden**

Misite argues that FirstBank is not entitled to summary judgment because: (1) misrepresentations made by FirstBank's agents placed Misite in an unfavorable financial position which forced her to agree to the terms of the Note and Construction Mortgage; (2) FirstBank breached its obligations under the Note and the Mortgage and, as such, is responsible for Misite's default; and (3) the notice of acceleration provided to Misite informed her that her mortgage may be accelerated, not that the mortgage was accelerated.[5]

---

[5] Misite also argues that the summary judgment motion is procedurally defective because discovery has not been completed. No rule provides that a motion for summary judgment may only be filed after discovery has been completed. Instead, Federal Rule of Civil Procedure 56(d) provides a mechanism for seeking additional time to respond to a motion for summary judgment pending resolution of discovery. The Magistrate Judge denied Misite's Rule 56(d) motion on January 31, 2018. ECF No. 56.

### 1. Misrepresentations by Agents of FirstBank

Misite contends that FirstBank fraudulently induced her to take certain actions which left her no choice but to agree to the terms of the Note and the Construction Mortgage.

In support of her contentions, Misite adduced her own affidavit. In her affidavit, Misite states:

8. In January 2012 and upon my inquiry to FirstBank regarding a second refinancing of the Construction Loan, Dina Perry[("Perry")], Vice-President of Regional Consumer Lending Manager for FirstBank, represented to me that the Construction Loan could be converted to a "conventional fixed rate facility", hereinafter ("Second Loan"), but to do so required me to construct "two units in the home" so that I could qualify, "after receipt of the occupancy permit," for $800,000 refinance. (See Ex. "A").

9. On April 11, 2013 an occupancy permit for the Project was issued by the Department of Planning and Natural Resources. (See Ex. "B").[6]

10. On April 12, 2013, Dina Perry reaffirmed, represented and specifically advised me that the conversion of the Construction Loan to a conventional fixed rate facility would be completed upon "receipt of a certificate of occupancy" for the home and the second unit. (See Ex. "A").

11. On April 15, 2013, FirstBank's agent, S. Dennis Dore, again reaffirmed, represented and specifically advised me that once FirstBank "received the Certificate of Occupancy" for the home and the second unit the conversion of the

---

[6] Exhibit B is a request for issuance of "Certificate of Use and occupancy." That document was stamped as received on April 11, 2013. ECF No. 48-3. There is no indication on that document that such a certificate was issued.

>   Construction Loan to a conventional fixed rate facility would occur "within a week." (See Ex. "A").
>
> 12. As a result of FirstBank's representations and negligence, I was forced to use nearly $450,000 of my personal funds, derived from my having to deplete my savings, retirement accounts, refinance my Massachusetts home, and incur additional credit card debt, which were diverted to the construction of a second unit so that, as promised by FirstBank, I could convert the Construction Loan to a conventional fixed rate facility upon obtaining as occupancy permit. (See Ex. "A").
>
> 13. After draining all of my personal assets to complete the second unit, I was then advised by First Bank's agent, Christopher Papataros, that the conversion of the Construction Loan to a conventional fixed rate facility could not be completed with the issuance of a certificate of occupancy but that home also had be found as "verified complete." Mr. Papataros informed me that off of the information Ms. Perry, Vice President of Regional Consumer Lending for First Bank, was incorrect.
>
> 14. Because I had used all my personal financial resources, the remaining balance of loan proceeds and incurred huge sums of interest credit card debt, I was unable to complete the home as was now being demanded by FirstBank for the loan conversion to a fixed rate facility.
>
> 15. I [sic] Because I had used all of my savings, home equity, withdrawn my retirement finances and incurred over $75,00 [sic] in credit card debt I had no alternative and under extreme emotional duress fell victim to FirstBank's unilateral terms forced upon me by FirstBank in the guise of a new refinancing agreement for the Construction Loan ("Second Refinance"), which terms I was unable to negotiate for or bargain over .

*Misite Affidavit*, ECF No. 48-1, at ¶¶ 10-17.

Exhibit A, referenced in her affidavit, was also adduced by Misite. That document appears to be a letter from Misite to Perry dated May 8, 2013. *See* ECF No. 48-2. In that letter, Misite indicates that on April 12, Perry sent an email to Misite stating that "[u]pon receipt of your certificate of occupancy, we will be able to finalize the conversion of your construction loan to a conventional fixed rate facility." *Id.* at 1. Misite also indicates on April 15, S. Dennis Dore sent an email to Misite indicating that once he received a certificate of occupancy, various documents could be executed. *Id.* at 1-2. Misite also recounts statements made in other meetings as follows:

> Also, recall our phone conference in January of 2011 with Dennis Dore and Paul Guerrier where Mr. Guerrier stated that after all my difficulties with First Bank including paying exorbitant inspection fees and losing six (6) months of building waiting for a refinance, that he would see to it that he would keep my interest percentage low and eliminate closing costs and Fannie Mae fees {points}.
>
> Also recall that in January of 2012, in a meeting with you, Dennis Dore, Jim Lawrence and myself, that you advised us to create two units in the house so we could qualify for $800,000 refinance after we received the occupancy permit.

*Id.* at 2.

In her brief, Misite describes her defense as an "affirmative defense that FirstBank fraudulently induced her

into further transactions." Significantly, a fraudulent inducement defense usually applies when a party enters into a contract in reliance on fraudulent misrepresentations. That is not the gravamen of the objection raised by Misite.

Instead, Misite is arguing that her economic circumstances changed due to her reliance on fraudulent misrepresentations and, as a result, she was forced to accept the terms of the Note and Construction Mortgage. As such, the more applicable defense is economic duress.

Economic duress exists when (1) . . . one side involuntarily accepted the terms of another; (2) . . . circumstances permitted no other alternative; and (3) . . . said circumstances were the result of coercive acts of the opposite party. 28 Williston on Contracts § 71:7 (4th ed.); *see also Berrios v. Hovic*, No. CIV. 05-CV-192, 2010 WL 2384589, at *4 (D.V.I. June 9, 2010) ("Maccow has not shown any improper threat on the part of Wyatt or that the only reasonable alternative he had was to sign the DRA. Maccow could have rejected the agreement and sought employment elsewhere. The argument that the DRA is voidable due to duress must be rejected.") (internal citations omitted); *Lempert v. Singer*, 766 F. Supp. 1356, 1362 (D.V.I. 1991) ("The misfortune of her stepfather's illness may have been a factor in Lempert's choice, but that illness was

obviously an event totally beyond the defendants' control, and they cannot be held responsible for it. Taking advantage of an existing hardship is not duress.") (internal citation omitted).

The Court will assume that Misite has met her burden with respect to the first two prongs and directs its attention to the third prong: that said circumstances were the result of coercive acts of the opposite party. Here, Misite asserts that she took various actions based on fraudulent representations made by FirstBank. Thus, to show that FirstBank caused her financial circumstances through fraudulent inducement, she must show that her actions were reasonable. *Cf. Fitz v. Islands Mech. Contractor, Inc.*, No. CV 2008-060, 2013 WL 4734487, at *4 (D.V.I. Sept. 3, 2013 ("The elements of fraudulent inducement are: (1) a misrepresentation of fact, opinion, intention or law; (2) knowledge by the maker of the representation that it was false; (3) ignorance of the falsity by the person to whom it was made; (4) an intention that the representations should be acted upon; and (5) detrimental and justifiable reliance.").

Here, Misite has not provided any information regarding the terms of a conventional fixed rate facility other than that the interest percentage would be low, there would be no closing costs, and that there would be no points. On the sparse factual record

provided to the Court, the Court cannot, even when drawing all inferences in Misite's favor, conclude that the expenditure of funds described in her affidavit--which placed her in difficult economic circumstances--was reasonable in light of the representations made by FirstBank.

Accordingly, Misite cannot avoid summary judgment on the basis of economic duress.

### 2. Breach by FirstBank

Misite also contends that FirstBank is responsible for her failure to make payments because FirstBank had assumed control of construction by, *inter alia*, reserving the right to validate contractor estimates; requiring Misite to use FirstBank's chosen contractor and requiring the construction progress to be validated by inspections; retaining control over approval and timing of disbursements to pay invoices; and requiring Misite to take out builder's risk insurance. On that basis, she argues that any failure to complete construction in a timely manner must be attributed to FirstBank, and, as such, it is FirstBanks' fault that the construction could not be verified as complete. Further, she contends that if the construction were verified as complete, additional funds would have been released, which would have allowed her to avoid default.

Misite's argument turns on her contention that FirstBank breached its obligations under the Note and Construction Mortgage. In support of that contention, Misite offers her own affidavit. In her affidavit, Misite states that:

> 17. FirstBank agreed that following the home being verified as complete, I could use all excess funds to pay off principal amounts owing on the debt, my high interest consumer credit card debt incurred to build the second unit or that said funds could be used towards [sic]
>
> 18. The excess funds did not become available because FirslBank negligently failed to assist Misite in completing construction on the property as promised and as such FirstBank negligently failed to verify the home as complete.
>
> 19. FirstBank's negligent assumption of total control over the Project, both with regard to construction and financing, made it impossible to complete construction on the property in a timely manner which further delayed my ability to obtain rental income form the second unit causing further damage to my financial situation.
>
> 20. Because of FirstBank's negligent failure to assist Misite in completing construction on the property the home has never been verified complete and 1 have been unable to use excess funds to make the payments towards those debts identified in paragraph No. 18 above.

*Misite Affidavit*, ECF No. 48-1, at ¶¶ 17-20.

Significantly, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Instead, the affiant must set forth specific facts that reveal a

genuine issue of material fact." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).

Misite's affidavit does not set out specific facts showing that FirstBank acted negligently after Misite agreed to the Note and the Construction Mortgage. Instead, it relies on conclusory assertions. Accordingly, her assertions are not sufficient to avoid summary judgment on this basis. *See id.*

### 3. Notice of Acceleration

Misite claims that Firstbank has failed to provide her with a proper notice of acceleration, which is a condition precedent to foreclosure pursuant to the Construction Mortgage. Specifically, she asserts that the notice of acceleration was required to inform her that that her loan *was* accelerated, not that the loan *could be* accelerated if she failed to make payment.

In support of that argument, she directs the Court to the Note. The Note provides, in pertinent part, that:

> This Note is a uniform instrument with limited variations in some jurisdictions, In addition to the protections given to the Note Holder under this Note, a Construction Security Interest Mortgage, Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate

> payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
>
>> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>>
>> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 of the Construction Security Interest Mortgage within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*Note*, ECF No. 41-3, at § 10.

Significantly, the Note provides an *example* of conditions under which acceleration could occur and directs the borrower to the Construction Mortgage for a description of all such conditions. The Construction Mortgage provides, in pertinent part, that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The

> notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument a d foreclosure and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of court.

*Construction Mortgage*, ECF No. 41-4, at § 22 ("Section 22").

That provision, Section 22, specifically indicates that acceleration due to transfer of the property or a beneficial interest in the borrower--the procedure described as an example in the Note--is treated differently than acceleration generally--which is governed by the general procedure described in Section 22. *See* ECF No. 41-4, at § 18; ECF No. 41-3, at § 10. The general procedure is applicable here. Thus, the notice provision only requires that the notice indicate that the lender *may*

accelerate the loan. ECF No. 41-4, at § 22. Accordingly, Misite's notice of acceleration objection lacks merit.

Because Misite's objections lack merit, she has not satisfied her burden to establish that there was a dispute of material fact or that FirstBank was otherwise not entitled to judgment as a matter of law.

For the reasons stated above, the Court entered summary judgment in favor of FirstBank on its foreclosure and debt claims on February 15, 2018.